UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SEGUIN,

        Plaintiff,

                                                        Case No.12-cv-11482
vs.                                           HON. GERSHWIN A. DRAIN

DELTA AIRLINES INC., *et al.*

        Defendants.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#24] AND DENYING
DEFENDANT'S MOTION TO STRIKE RESPONSE
TO MOTION FOR SUMMARY JUDGMENT [#27]**

I. INTRODUCTION

      This lawsuit arises out of Plaintiff's alleged wrongful termination from Delta Airlines, Inc. ("Delta"). Plaintiff brings allegations of Breach of Contract and Wrongful Termination (Count I), Failure to Represent by International Association of Machinist & Aerospace Workers ("IAMA") (Count II), and Defamation of Character (Count III). This matter is presently before the Court on Defendant's FED. R. CIV. P. 56(c) Motion for Summary Judgment. Although Plaintiff's response to the Motion for Summary Judgment was dilatory, for the reasons stated below, the Court will allow it. Furthermore, the Defendant's Motion for Summary Judgment is GRANTED. This Opinion and Order sets forth the Court's ruling.

## II.  FACTUAL BACKGROUND

Plaintiff brought this employment action on April 3, 2012, against Defendants Delta and IAMA, District No. 143.  Plaintiff began employment with Delta (at the time it was called Republic Airlines) on June 28, 1986, at the Detroit terminal.  On August 2, 2011, Plaintiff attended a meeting with Delta and was shown pictures of himself removing a gas can from his vehicle and later replacing the can in his vehicle.  He was told it appeared that the gas can was empty when Plaintiff removed it from his car and full when he replaced it.

Plaintiff was questioned for approximately an hour. After being assured that he would not be severely disciplined if he admitted to taking company property – Plaintiff agreed that he did take property. Plaintiff was notified by letter on August 17, 2011, that his employment with Delta had been terminated. Plaintiff attempted to follow the Collective Bargaining Agreement ("CBA") grievance procedure, but the Union did not provide him with a grievance form or represent him in any way.

Approximately nine months before Plaintiff was terminated, the Union's application to serve as the bargaining representative for the Delta TechOps Stores, where Plaintiff was employed, was dismissed. *See* Mot., Blackmon Affidavit, Dkt. No. 24-3, ¶¶ 6-9. The result of the decertification was that the CBA was no longer in effect and the Union ceased to exist and was no longer functional. *See Id.* at ¶ 9.

Subsequently, Delta granted Plaintiff a Conflict Resolution Process hearing in front of a panel on December 6, 2011. But Plaintiff claims that letters written on his behalf were never forwarded to the hearing panel. Plaintiff also contends that he was not allowed to

present any witness testimony at the hearing; whereas, Delta was permitted to do so. The panel ultimately upheld his termination.

Plaintiff further claims that Delta created a flyer and circulated it to security personnel. The flyer indicated the Plaintiff was a felon and that he was not permitted on airport property unless he had a valid airline ticket. Plaintiff maintains that he is not a felon, nor was he ever advised that he was not allowed on airport grounds.

### III. ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. Defendant's Motion to Strike Memorandum Opposing Summary Judgment #27

In accordance with Local Rule 7.1(e)(B), a memorandum in opposition to any motion is to be filed and served within 21 days after the motion was served. Applying that rule to

this matter, Plaintiff's memorandum in opposition to Defendant's summary judgment motion was filed some 26 days out of time.

Courts ordinarily prefer to decide motions after duly considering the position advanced by each party. The Court is not precluded from deciding a dispositive motion without considering input from a party who was afforded an opportunity, but failed, to timely apprise the Court of its arguments. In this matter, Plaintiff's attorney has stated that discussions with his client regarding various aspects of the case caused him to file the response brief late.

As a practical matter, however, the Court had not begun to consider Defendant's summary judgment motion before Plaintiff filed his opposing memorandum, and Plaintiff's untimely filing, thus, did not delay resolution of the motion. Plaintiff has presented the Court with good cause to allow the late filing of his response. Furthermore, Defendant has not asserted, nor does it appear that it could articulate, any prejudice stemming from Plaintiff's untimely filing. *See* Mot., Dkt. No. 27. Given the Court's reluctance to decide a dispositive motion without considering input from all affected parties, the Court is not inclined to strike an untimely filing that resulted in no delay in the proceedings.

### C. Motion for Summary Judgment

#### 1. Breach of the CBA

##### a. Six-month Limitation Period

Delta first argues that Plaintiff's claim for Breach of the CBA is time-barred pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. §§ 181 et seq., and not the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141,*et seq.*, as Plaintiff erroneously asserts in its

answer. *See* Mot., Dkt. No. 24, pg. 17. Delta further clarifies that both Acts have a six-month period of limitations for an alleged breach of duty of fair representation.

Delta contends that Plaintiff admitted that he was aware that the Union was not filing a grievance on his behalf as early as August 22, 2011. *See* Mot., Dkt. No. 24, pg. 18. Delta points to Plaintiff's deposition testimony where Plaintiff was asked if the Union communicated to him that they would not be representing him or filing grievances for him. Delta maintains that because Plaintiff responded by saying, "I believe it was Ray [Hernandez] that told me something, but – because Ray told me there were no grievances," that Plaintiff was aware that the Union would not be filing a grievance on his behalf. *See Id.*; *see also*, *Id.*, Dkt. No. 24-2 pg. 12.

Plaintiff concedes that Delta is correct in asserting that the issues in this case fall under the purview of the RLA and not the LMRA. Plaintiff argues that his claim is not time-barred because on August 22, 2011, Plaintiff was not informed that the Union would not be representing him. *See* Plt.'s Resp., Dkt. No. 26, pg. 14. Plaintiff states it was not until October 7, 2011, that he learned that the Union would not represent him. Plaintiff contends that he was never told that the Union was not filing grievances nor that the Union was no longer certified. Plaintiff insists that he continued to have discussions with various members of the Union in an attempt to get his matter resolved. *See Id.* at 13. The Court finds that Plaintiff knew or should have known there would not be any Union representation on August 22, 2011.

Plaintiff's claims of Breach of the CBA and Failure to Represent by the Union is viewed as a hybrid breach of contract/breach of duty of fair representation case pursuant to the RLA. *Haneley v. Int'l Bhd. Of Locomotive Eng'rs*, 69 Fed. Appx. 292, 298 (6th Cir.


2003). The RLA has set forth a unique framework in determining the merits of this hybrid claim. To prevail against either the employer or the union in a hybrid breach of contract/breach of duty of fair representation case, Plaintiff must prove that "the employer breached the terms of the collective bargaining agreement and that the union breached its duty of fair representation." *Id.* (citing *Hines v. Anchor Motor Freight*, 424 U.S. 554, 571 (1983)).

"The two claims are inextricably interdependent." *DelCostello v. Int'l Brd. of Teamsters*, 462 U.S. 151, 164, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983) (internal quotation marks and citation omitted); *see also Chauffers, Teamsters & Helpers, Local 391 v. Terry*, 494 U.S. 558, 564, (1990) (noting that "whether the employee sues both the union and the employer or only one of those entities, he must prove the same two facts to receive money damages: that the employer's actions violated the terms of the collective bargaining agreement and that the union breached its duty of fair representation.") (citations omitted); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 930 F.2d 505, 510 (6th Cir. 1991) ("In any event, when the union cannot be held liable for unfair representation, of course, the employer cannot be held liable for breach of the collective bargaining agreement.")(citations omitted).

Both parties now correctly agree that Plaintiff's claims arise under the RLA. *See* Mot., Dkt. No. 24, pg.18, Resp., Dkt. No. 26, pg. 12. The parties also agree that accrual of the action begins when the plaintiff knew or should have known of the Union's alleged breach of its duty of representation. *See Ratosky v. United Transportation Union*, 843 F.2d 869,873 (6th Cir. 1988).

Plaintiff does not deny that he was told on August 22, 2011, by the Union that it would not be representing him or filing any grievances on his behalf. *See* Mot., Dkt. No. 24-

2, Seguin Deposition, pg. 12. Furthermore, Plaintiff knew that there was not a contract in existence at the time that he was terminated. In fact, Plaintiff availed himself of Delta's Equal Opportunity and Compliance and Conflict Resolution processes to attempt to get his issue resolved. Plaintiff's action indicate that he knew that the Union was not going to proceed with filing his grievance; thus, he used the mitigation procedures Delta put in place after the Union decertification. *See Id.* at 16. The Court finds that Plaintiff knew or should have known on August 22, 2011, that the Union allegedly breached its duty of fair representation, and the six-month statute of limitations period began at that time. Therefore, Plaintiff's claim is time barred as a matter of law. The Court grants summary judgment against Plaintiff in Count I.

### b. Breach of Duty of Fair Representation-Delta/Breach of Contract- Delta (Counts I and II)

Secondly, Plaintiff's Count I – Breach of Contract and Wrongful Termination, and Count II – Failure to Represent by IAMA are "interrelated claims, one against the plaintiff's labor union and the other against the plaintiff's employer." *DelCostello* at 164-165. In this type of hybrid action, "the RLA affords an employee an implied right of action against his union for breach of the duty of fair representation. . . . An employee may join in this action against the employer and assert that the collective bargaining agreement has been breached if he can allege that the employer's conduct somehow contributed to the union's breach." *Id.*

Delta argues that Plaintiff cannot establish that the Union breached its duty of fair

representation. Delta maintains that the Union's application to serve as bargaining unit for Delta employees was dismissed by the National Mediation Board. Therefore, Delta contends, that the Union's duty to represent Plaintiff was never triggered. Delta further argues that in addition to there being no grievance procedure in place, Plaintiff's admission that he engaged in theft by stealing would support the Union's decision not to proceed with a grievance. The affidavit of Roger Harder supports this and no contradictory affidavit was submitted by Plaintiff. *See* Mot., Roger Harder Affidavit, Dkt. Mo. 24-4.

Plaintiff argues that the Union never filed a grievance on his behalf; yet, the Union filed grievances on behalf of other similarly situated employees. Plaintiff contends that 45 U.S.C. § 156 extends the CBA and thus, the Union breached its duty of fair representation.

A union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42 (1979) Here, Plaintiff does not provide the Court with any facts indicating that the Union's treatment of him or similarly situated employees was arbitrary, discriminatory, or conducted in bad faith. Plaintiff's conclusory statement without more is not enough to establish the Union breached its duty of fair representation. The Court finds this argument to be totally lacking in merit.

In fact, Plaintiff's deposition testimony contrarily states that he was unaware and didn't know if anyone filed grievances after the 2010 decertification election. *See* Dkt. No 28 pg. 6. Thus, in the event that Plaintiff attempted to allege that the Union's conduct

in filing grievances was somehow discriminatory – in light of Plaintiff's testimony and the insufficient facts to support his proposition – the Court finds Plaintiff's assertion to be disingenuous. Therefore, the Union did not breach it's duty of fair representation to Plaintiff. Most importantly, the Union was not in existence at the time of Plaintiff's termination.

An employer is liable together with the union for the union's breach of its duty of fair representation if it acts in collusion with the union. *See e.g., Alvey v. General Electric Co.*, 622 F.2d 1279, 1290 (7th Cir. 1980). "If the RLA-based [duty of fair representation] claim against the union is dismissed, the claim against the employer must also be dismissed." *See United Independent Flight Officers, Inc. v. United Airlines, Inc.* 756 F.2d 1274, 1283. Plaintiff has not presented any facts that show that Delta was in collusion with the Union regarding any of its actions.

Moreover, Plaintiff's claim could not stand against Delta absent a claim of duty of fair representation against the Union; both claims are "interrelated." Therefore, summary judgment against Plaintiff in Counts I and II are granted as a matter of law.

## II. Defamation (Count III)

In order to maintain an action for defamation in Michigan, Plaintiff must establish each of the following four elements:

> (a) a false and defamatory statement concerning plaintiff;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and

> (d) either actionability of the statement irrespective of special
> harm (defamation per se) or the existence of special harm
> caused by the publication (defamation per quod).

*DeCoe v. GMC*, 32 F.3d 212, 217 (6th Cir. 1994).

Plaintiff concedes in its response that he admitted the statements made by Delta about him were in fact true statements. Therefore, Plaintiff's claim of Defamation is dismissed.

## IV. CONCLUSION

Accordingly,

For the reasons stated above, Delta's Motion for Summary Judgment **[#24]** is **GRANTED**.

SO ORDERED.

Dated: June 10, 2013  /s/Gershwin A Drain
GERSHWIN A. DRAIN
United States District Court Judge